In The United States District Court for The
Middle District of Tennessee
Nashville Division

FILED
2025 APR 14 PM 2:10
U.S. DISTRICT COURT
MIDDLE DISTRICT OF TN

| | | |
|---|---|---|
| Plaintiff Trevor S. Adamson | ) | Jury Demand (prejudiced) |
| V. | ) | Case No. |
| Defendants Daniel A. Horwitz | ) | Judge |
| Melissa K. Dix | ) | |
| Sarah L. Martin | ) | Magistrate |
| Lindsay E. Smith | ) | |

## Complaint

### Introduction

"The right of a man or woman to the protection of his or her own reputation from unjustified invasion and wrongful hurt reflects no more than our basic concept of essential dignity and worth of every human being – in concept of the root of any decent system of ordered liberty."

Rosenblatt v. Baer, 383 U.S. 75, 92 (1966) (Stewart J. Concurring).

1. The submitted email from Daniel A. Horwitz of Horwitz Law PLLC", establishes his and his co-defendants intention of engaging in "scorched earth defense" litigation against opposing counsel, litigants and in the case of 3:24-CV-01180, The Middle Tennessee District Court Judges and The United States District Court for The Middle Tennessee Nashville Division itself. In Parkway + Trust co. v Korzen, 2013 IL App 91st) 130380. The Court held. "We constantly remind attorneys that they should maintain civility even though they must act as zealous advocates. See. Talamine V. Apartment Finders, Inc., 2013 IL App(1st) 121201, 9-12. Zealous advocacy, however, must not deteriorate into zealotry, regardless of whether the advocate is a lawyer or a self-represent litigant." See page 36. Parkway Bank + Trust Co. V. Korzen. In regards to the term zealotry, see. Daniel A. Horwitz @danielahorwitz X/Twitter.

"Fraud Upon the Court + Abusive Discovery"

2. Daniel A. Horwitz email to former counsel Kathleen Redpath was intended as a clear threat and intimidation, to force opposing counsel to abandon her client, force myself into non-suit and leave me as a pro-se litigant in the Sumner County Trial court. Daniel A. Horwitz states clearly his objective, to have Adamson V. Grove

(M2020-01651-COA-R3-CV) non-suited. Every page of litigation post-nonsuit must be seen as a fraud upon the lower courts, as Daniel A. Horwitz knew the merits of the reason for non-suit; therefore, all litigation on record before the Tennessee Supreme Court as well as the subsequent streaming of some, but not all hearings in Adamson V. Grove are continued defamation, so egregious that character assassination, would be the appropriate designation. Daniel A. Horwitz PLLC and all litigants, as well as counsels partook in successfully making me excruciatingly famous."

## The Federal Court and Inherent Powers

3. It is established law that state and federal courts have "the inherent power to regulate litigation and to sanction litigants for abusive practices." Vargas v. Peltz, 901 F. Supp. 1572, 1579 (S.D. Fla. 1995). See also Malautea v. Suzuki Motor Co., 987 F.2d 1536, 1545 (11th Cir.), cert. denied, 510 U.S. 863 (1993) (recognizing that federal courts have the inherent power to impose reasonable and appropriate sanctions on those appearing before them); Aoude v. Mobil Oil Corp., 892 F.2d 1115, 1118 (1st Cir. 1989) ("[A] federal district court possesses the inherent power to deny the court's processes to one who defiles the judicial system by committing a fraud on the court"); Pope v. Federal Express Corp., 138 F.R.D. 675, 683 (W.D. Mo. 1990), aff'd in part, vacated in part on other grounds, 974 F.2d 982, 984 (8th Cir. 1992) (court has inherent power to sanction litigants for improper conduct); Telectron, Inc. v. Overhead Door Corp., 116 F.R.D. 107, 126 (S.D. Fla. 1987) (stating the general rule).

It is equally well-established that those inherent powers include the authority to dismiss the claims or defenses of or enter a default judgment against a litigant who engages in dishonest conduct, obstructs the discovery process, abuses the judicial process, or otherwise seeks to perpetrate a fraud on the court. See, e.g., Link v. Wabash Railroad Co., 370 U.S. 626, 630–632 (1962). See also Aoude, 892 F.2d at 1118; McDowell v. Seaboard Farms of Athens, Inc., 1996 WL 684140, 2-3 (M.D. Fla. 1996) (cases cited therein); Sun World, Inc. v. Lizarazu Olivarria, 144 F.R.D. 384, 389 (E.D. Cal. 1992) (holding that, when a litigant commits a fraud upon the court, "the inherent powers of the court support the sanction of dismissal and entry of default judgment"); Pope, 138 F.R.D. at 682 (dishonest conduct by a party or conduct that "threatens the integrity of the judicial process" is grounds for dismissal with prejudice under Rule 41(b)); Amway Corp. v. Shapiro Express Co., 102 F.R.D. 564, 569–70 (S.D.N.Y. 1984); Cox v. Burke, 706 So. 2d 43 (Fla. 5th DCA 1998); Kornblum v. Schneider, 609 So. 2d 138 (Fla. 4th DCA 1992).

## Conclusion

The majority of some 44 state courts do not have YouTube channels and those states that do have content which is purely informational such as California and Utah. Therefore, I Trevor S. Adamson, asked the federal court to exercise its powers and its discretion in these matters. Furthermore, I ask the federal court to answer the question can a state court stream their cases to YouTube without consent of all parties? These items being not only a matter of public record but also streamed live to YouTube without for example consent of all parties, I believe gives the Federal Court the jurisdiction to determine, if and how courts may stream to YouTube. In the case of Adamson V. Grove, it can't be seen that I myself had substantive due process. I am asking to the court to also determine what it see this pleading as, because in my eyes, it is not only a new complaint in regard to Adamson V. Grove but a seperate complaint against the attorneys involved in the suit themselves. In addition, it is sort of an amicus curiae, regarding the same subject jurisdiction matter of case 25-5036. I'm also proceeding in what I have coined "amicus publica" friend public.

Trevor S. Adamson

615-484-7784

Trevoradamson86@gmail.com



# Fwd: Adamson - Amended Complaint

**Trevor Adamson** <trevoradamson86@gmail.com>                              Sun, Apr 13, 2025 at 4:12 PM
To: "michelleparkermusic@gmail.com" <michelleparkermusic@gmail.com>

---------- Forwarded message ---------
From: **Kathleen Redpath** <attorney.redpath@gmail.com>
Date: Wed, Aug 12, 2020, 5:44 PM
Subject: Fwd: Adamson - Amended Complaint
To: <trevoradamson86@gmail.com>


We need to discuss this message and what needs to happen next.

---------- Forwarded message ---------
From: **Daniel Horwitz** <daniel.a.horwitz@gmail.com>
Date: Wed, Aug 12, 2020 at 5:19 PM
Subject: Re: Adamson - Amended Complaint
To: Kathleen Redpath <attorney.redpath@gmail.com>


Kathleen,

Thank you for sending this, which I appreciate. I regret that the balance of this correspondence—a Rule 408 communication—will be somewhat less friendly.

It is not generally my practice to tip my hand or give a plaintiff who files what is properly regarded as a SLAPP-suit the opportunity to avoid the consequences of doing so. Most end up paying me rather large sums of money in such cases:

   https://www.techdirt.com/articles/20200615/16392344717/anti-slapp-law-turns-bogus-defamation-lawsuit-into-26500-legal-bill-plaintiff.shtml

   https://www.tennessean.com/story/news/2018/12/10/randy-rayburn-defamation-suit-award-tom-loftis/2268874002/

   https://www.techdirt.com/articles/20200214/14254843921/doctor-suing-patient-over-negative-review-has-his-case-dismissed-under-tennessees-new-anti-slapp-law.shtml

   https://www.bizjournals.com/nashville/news/2019/02/05/judge-sides-with-metro-officials-property-owner-in.html

Others just end up bankrupt because of them. Nearly all of them end up becoming excruciatingly famous for their worst moments and the cases themselves. None of them ever wins.

Your client's case falls within the unusually frivolous variety. The fact that he is a public figure and current congressional candidate, has an embarrassing criminal record (attached), and makes nowhere near the amount of money that he has sworn under oath to be able to claim as damages further simplifies things. The fact that none of the statements over which he has sued is even plausibly actionable seals the matter.

The point is this: If your client maintains this lawsuit past 5:00 p.m. tomorrow, the consequences will be severe, and

he is unlikely to recover from them. The fact that I can place a lien on his home (valued at $163,900 per the attached) and collect my fee that way also makes it unnecessary to let up at any point. Having initiated a baseless, multi-count, $800,000 claim against three separate defendants—providing dozens of means to generate a fee-shift and sanction—and regarding which I anticipate being able to generate a sanction equivalent to approximately 3-5% of the amount in controversy for each defendant, this case is basically ideal.

The reason I'm conveying all of this is twofold. First, we have a mutual colleague, Sarah Martin, who insists that you are a great person who doesn't deserve the fallout that commonly results from the scorched-earth defense that I provide in SLAPP-suits, rather than the type of villainous lawyer I am used to clashing with under circumstances like this. Second, your client strikes me as being unusually thin-skinned and the sort of person who actually might think twice about going through with this case if he were aware of both the financial risk and the heavy publicity that will result from it. Indeed, I have refrained from publicizing your client's lawsuit to date in anticipation of extending this offer, though that will change very quickly in the event that he does not quickly come to his senses regarding it. Put another way: If your client thinks that his reputation has been harmed now, then he should imagine what things will look like from the perspective of someone who is asked for his comment on a series of news articles about the failed congressional candidate who was sanctioned into bankruptcy and lost his home to opposing counsel after unsuccessfully suing three LGBTQ organizers over some light facebook criticism.

To make this unmistakably clear: This is the first and last settlement offer that will be made in this case. One time only, in exchange for the voluntary dismissal of your client's Amended Complaint—and every cause of action within it—with prejudice, each of my clients is willing to execute a mutual release of all claims to end all conceivable disputes between them and Mr. Adamson and allow everyone to move on from this matter before it gets ugly. The release would include each defendant's available claims for abuse of process and malicious prosecution against your client and your firm.

I would encourage your client to take this offer seriously, but the honest to God truth is that I do not much care if he does or not. Nonetheless, if your client does not accept this offer and quietly dismiss this lawsuit with prejudice by 5:00 p.m. tomorrow, then he is stuck with it—and the consequences that come with it—for good.

All the best,

-Daniel Horwitz

--
Daniel A. Horwitz, Esq.
daniel.a.horwitz@gmail.com
www.danielhorwitz.com


On Wed, Aug 12, 2020 at 4:06 PM Kathleen Redpath <attorney.redpath@gmail.com> wrote:
> Dear Mr. Horwitz:
>
> Attached below should be the Amended Complaint in the matter of Adamson v. Gert, et al. The Exhibits should be the same as the original.
>
> Thank you,
> Kathleen
>
>
> 115 Shivel Drive,
> Hendersonville, TN 37075
>
> *This message and its contents are confidential. If you received this message in error, do not use or rely upon it. Instead, please inform the sender and then delete it. Thank you.*


115 Shivel Drive,
Hendersonville, TN 37075

*This message and its contents are confidential. If you received this message in error, do not use or rely upon it. Instead, please inform the sender and then delete it. Thank you.*

**2 attachments**

- **Certified Copies, Davidson County Charges.pdf**
  650K

- **TREVOR SETH ADAMSON-Comprehensive-Report-202007261628.pdf**
  185K